IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANNA M. ROACH, as administrator of the Estate of DANIEL J. ROACH, Plaintiff, | C.A. No. 23-182 Erie |
| v. | District Judge Susan Paradise Baxter |
| MCKEAN COUNTY, et al., Defendants. | |

## MEMORANDUM OPINION

### I.  INTRODUCTION

#### A.  Relevant Procedural History

On June 14, 2023, Plaintiff Anna M. Roach, as administrator of the estate of her deceased husband, Daniel J. Roach ("Decedent"), initiated this civil rights action under 42 U.S.C. § 1983, against Defendants McKean County ("County"); Daniel J. Woods ("Woods"), who at all relevant times was Warden of the McKean County Jail ("MCJ"); and two unnamed MCJ corrections officers identified as John/Jane Doe 1 and John/Jane Doe 2 (collectively referred to as "Doe Defendants"). At all relevant times hereto, Decedent was detained at MCJ as a pretrial detainee.

Plaintiff alleges that Defendants were deliberately indifferent to Decedent's serious medical needs, failed to provide adequate medical care to the Decedent, and delayed in transporting him to the hospital for seven days, all of which ultimately led to Decedent's death. In addition, Plaintiff claims that Defendants County and Woods had a policy, practice or custom of "providing inadequate treatment and/or inadequate COVID-19 testing to inmates experiencing COVID-19 symptoms and/or inmates with serious medical needs." (ECF No. 1, at ¶ 31). As a result, Plaintiff asserts four claims: (1) a claim of deliberate indifference to serious medical needs

1

in violation of Decedent's rights under the fourteenth amendment to the United States Constitution; (2) a survival action based upon the alleged violation of Decedent's Fourteenth Amendment rights; (3) a municipal liability claim against Defendant County; and (4) a wrongful death action pursuant to 42 Pa. C.S. § 8301.

Defendants have filed a motion to dismiss [ECF No. 10] seeking dismissal of Plaintiff's Fourteenth Amendment and municipal liability claims because they are based on "vague and boilerplate allegations" of inadequate medical care, or, alternatively, seeking a more definite statement of such claims. In addition, Defendant moves to dismiss Plaintiff's claims against Defendant Woods as redundant of the claims raised against Defendant County, as well as Plaintiff's claim for "loss of the constitutional rights of the Decedent's children," and her claims for punitive damages and wrongful death against Defendant County. Finally, Defendant seeks dismissal of Plaintiff's claims to the extent they assert medical negligence.

Plaintiff has filed a brief in opposition to Defendant's motion [ECF No. 15] arguing that her Fourteenth Amendment and municipal liability claims are sufficiently pled, but conceding dismissal of her claims for punitive damages and wrongful death against Defendant County and her claim for "loss of the constitutional rights of the Decedent's children." (Id. at p. 13). In addition, Plaintiff denies pleading a claim of medical negligence. Defendant has since filed a reply to Plaintiff's opposition [ECF No. 16]. This matter is now ripe for consideration.

**B.     Plaintiff's Allegations[1]**

Plaintiff contracted COVID-19 in October 2021 while confined at MCJ. (ECF No. 1, at ¶¶ 10-11). During a telephone conversation with Plaintiff on or about October 26, 2021,

---

[1] "'When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted).

Decedent complained of experiencing serious symptoms of COVID-19, including, among other things, difficulty breathing and "tasting pneumonia." (Id. at ¶ 12). At that time, Decedent had not been tested for COVID-19 despite Defendants' actual knowledge of his serious symptoms. (Id. at ¶ 13). Thereafter, Decedent continued to become "increasingly and observably ill" and experienced "extreme difficulty breathing." (Id. at ¶ 14). During this time, Decedent and other inmates at MCJ, complained to staff that Decedent's condition was worsening and that he was having difficulty breathing. (Id. at ¶¶ 25-26). In particular, inmates at MCJ repeatedly requested medical attention for Decedent from the Doe Defendants, stating that "he needs help or he is going to die." (Id. at ¶ 23). These inmates also informed Plaintiff that Decedent requested medical attention from Defendants County, Wood, and the Doe Defendants, and that he was observably ill for several days. (Id. at ¶ 22). Yet, Defendants "failed to provide adequate medical care to the Decedent" and "took no legitimate action to treat his medical needs." ((Id. at ¶¶ 15, 27).

On or about November 1, 2021, Decedent was transported to Bradford Regional Medical Center, where he reported to medical staff that he had experienced serious symptoms of COVID-19, including extreme difficulty breathing, for approximately seven (7) days. (Id. at ¶¶ 16-17, 21). Thereafter, Decedent was transported to DuBois Regional Medical Center and placed on a ventilator. (Id. at ¶ 18). Nonetheless, Decedent died in the hospital due to COVID-19 on or about November 9, 2021. (Id. at ¶ 19).

## II.   DISCUSSION

### A.   Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that "Decedent's death was a direct and proximate result of the Defendants' deliberate indifference to his medical needs and failure to treat the [Decedent]

3

and/or transport the [Decedent] to a hospital for approximately seven (7) days…. (Id. at ¶ 20). As a result, Plaintiff claims that Defendants "violated the Fourteenth Amendment's prohibition against cruel and unusual punishment." (Id. at ¶ 38).

The Due Process Clause requires the government to provide appropriate medical care to detainees. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987) citing City of Revere, 463 U.S. 239. The protections provided to pretrial detainees by the Due Process Clause are "at least as great as the Eighth Amendment protections available to convicted prisoners." City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 245 (1983). See also Bistrian v. Levi, 912 F.3d 79, 91 (3d Cir. 2018). A pretrial detainee's claim is still analyzed under the familiar standard established in Estelle v. Gamble for Eighth Amendment claims which provides that prison officials are required "to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) citing Estelle v. Gamble, 429 U.S. 97 (1976). See also Edwards v. Northampton County, 663 Fed. Appx. 132, 136 (3d Cir. 2016) ("pre-trial detainee's claim for inadequate medical care adjudicated under the Due Process Clause," but "decisions interpreting the Eighth Amendment serve as 'useful analogies'").

A constitutional violation occurs when prison officials are deliberately indifferent to an inmate's serious medical needs. To establish a claim of deliberate indifference, a claimant must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse, 182 F.3d at 197. Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.

As an initial matter, Defendants argue that Plaintiff has failed to establish that Decedent had a serious medical need prior to his transportation to the hospital. (ECF No. 11, at p. 11). Specifically, Defendants contend that "[t]he fact that [Decedent] had COVID-19 symptoms

4

while incarcerated does not, in and of itself, establish a 'serious medical need,'" and "[t]he fact that the Decedent died 9 days after being admitted to the hospital does not mean that his condition was serious *prior* to his transport by prison officials to the hospital. (Id. at pp. 11-12). This contention significantly understates Plaintiff's allegations and borders on being disingenuous.

Plaintiff does not simply allege that he was experiencing run-of-the-mill COVID-19 symptoms while he was incarcerated, as Defendants attempt to portray in their opposition (Id. at p. 11). Rather, Plaintiff plainly alleges that Decedent was suffering "extreme difficulty breathing for approximately seven (7) days" before he was transported to the hospital, and that he was becoming "increasingly and observably ill" for several days, to such an extent that other inmates were requesting medical attention for Decedent, pleading that "he needs help or he is going to die." (ECF No. 1, at ¶¶ 14, 17, 21-23, 25-26). These allegations are clearly sufficient to establish that Decedent had a "serious medical need." See Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (a "serious medical need" includes "one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention").

Second, Defendants challenge the sufficiency of Plaintiff's allegations regarding Defendants' inadequate medical treatment, arguing that Plaintiff has failed to show "what medical treatment was needed, what medical treatment was not provided or how the medical treatment provided was not 'adequate.'" (ECF No. 11, at p. 9). This argument totally misses the mark. Even a cursory reading of the complaint reveals that Plaintiff has alleged a complete lack of medical attention or treatment of the Decedent's COVID-19 symptoms during his incarceration. It is not incumbent upon Plaintiff to specify the type or level of medical treatment that was required or that should have been given. That determination would have been up to

5

Defendants and/or the medical providers at MCJ if they had, in fact, given Decedent the medical attention that was allegedly lacking.

It is well established that "[w]here prison authorities deny reasonable requests for medical treatment, … and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest. Similarly, where knowledge of the need for medical care is accompanied by the … intentional refusal to provide that care, the deliberate indifference standard has been met … finally, deliberate indifference is demonstrated when … prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (internal citation omitted). Plaintiff's allegations of inadequate medical care plainly fall within the confines of the foregoing definition of deliberate indifference.

Finally, Defendants contend that Plaintiff has failed to sufficiently allege Defendant Woods' personal involvement in any constitutional violation stemming from the alleged lack of medical treatment. Once again, Plaintiff's allegations in this regard are more than sufficient at the pleading stage. In particular, Plaintiff has alleged that both Decedent and other inmates at MCJ repeatedly requested medical treatment for Decedent from staff members, including Defendant Woods, and that Decedent was observably ill for several days before he was transported to the hospital. (ECF No. 1, at ¶¶ 22-26). Based on these allegations, Plaintiff alleges that Defendant Woods, among others, had actual knowledge and/or was "aware that the Decedent was extremely ill and experiencing shortness of breath as well as other serious physical complications associated with COVID-19, and that, despite this knowledge, [he was] deliberately indifferent to the Decedent's medical needs and failed to provide adequate medical care to the

6

Decedent." (Id. at ¶¶ 15, 27-28). Thus, Defendants' argument that Plaintiff's allegations against Defendant Woods are "broad and boilerplate" is unavailing.

For the foregoing reasons, Defendants' motion to dismiss and/or for a more definite statement of Plaintiff's Fourteenth Amendment claim will be denied.

### B. Municipal Liability Claim

Defendant seeks dismissal of Plaintiff's municipal liability claim against Defendant County, claiming it is legally deficient "for the same reasons as set forth in the preceding section regarding Plaintiff's allegations that the Decedent did not receive[] 'adequate medical care" while housed in [MCJ]." (ECF No. 11, at p. 14). Since the Court has already determined that Defendants' preceding challenge is groundless, Defendants' motion to dismiss Plaintiff's municipal liability claim against Defendant County on the same basis will be denied. Nonetheless, to the extent Plaintiff is asserting the same claim against Defendant Woods in his official capacity, such claim will be dismissed as redundant. Harris v. Cashman, 2021 WL 602679, at n.4 (W.D. Pa. 2021); Burton v. City of Philadelphia, 121 F.Supp.2d 810, 812 (E.D. Pa. 2000) ("because claims against individual defendants in their official capacities are equivalent to claims against the governmental entity itself, they are redundant and may be dismissed") (citations omitted).

An appropriate Order follows.